Good morning, your honor. My name is Emily Hartman. I'm with the Office of the State Appellate Defender. Can you speak up, please? Of course. Emily Hartman, with the Office of the State Appellate Defender, and I represent Daniel Ochoa. Good morning, your honor. Assistant State's Attorney, Joseph Alexander, on behalf of the people of the state of Illinois. Okay, you know our general. We'll give you freedom. Just don't stay here forever. The 15-15 and whatever minor differences, it's fine. This is the second time this case is here. We're not excited about it, but we'll do the best we can with it. So we go from there. Thank you, your honor. And as they speak up, because these aren't, they just tape recorded. They don't. Understood. Some of us don't hear so well either. Understood. I'll speak up. Me mainly. May it please the court. Counsel? Today I will focus on issues one and two. I'm happy to answer questions about other issues if this court would like. In this court's opinion, in the first appeal from Mr. Ochoa's conviction, this court held that he was denied his right to a fair trial when the state elicited the substance of his co-defendant's statements, testimony that this court held went beyond the parameters of the investigatory procedure exception to the hearsay rule. While this court remanded his case for a new trial, the state did the exact same thing the second time around by structuring his questions to elicit the substance of those statements. In both trials, the state elicited that the co-defendants were in custody right before eliciting the substance of statements that gave a detailed description, including a name and address, of Mr. Ochoa. The only reasonable inference from the state eliciting sequentially that first, the co-defendants were in custody, and second, that the police were looking for Tulango, was that it came from the co-defendants. Let me ask you a question. Obviously, it's a question you normally ask the state. Is there a way you feel you could have gotten this evidence in? The statements, the description of them? What you would have admonished the police officers to have said? No, the substance of the statements. What was said. I'm saying what you would have asked. How could the evidence have come in and comply with the case law and just talk about the investigation without, you know, making the exception of following the rule? I, the police officer, if I said, well, after the question, I'm going to be out looking for further gang members. They have overcome the initial objection. No, no. So, this is an unusual fact pattern. Because in this case, the only evidence that links Ochoa to this crime is his statement. So, if the state wants to get in the course of investigation that they interviewed the co-defendants and then arrested him, the state cannot do so in a way that is structured to suggest the information comes from the co-defendants and they can't elicit the substance. So, without any other evidence, when the questions are structured and it's elicited that the co-defendants are in custody right beforehand, the state is going to be applying to the jury where the information came from. Now, it might be relevant. The jury might wonder why Mr. Ochoa was arrested. So, there is some relevance that might exist as far as the course of investigation. But it's worth noting that even if it is relevant, a judge must weigh that against the risk of prejudice and against the risk of misuse of the evidence. Now, the evidence that we're talking about here came in in the form of testimony from two separate detectives, right? Two separate detectives, correct. And when the first detective testified, Detective Garcia, the trial judge on several occasions sustained objections, struck an answer and instructed the jury to disregard it, right? He did, but he did not strike the name. I'll get back to you. We'll get back. But then, they still came in and evidence came in with the first officer, right? Correct. And then the second officer, public defender, doesn't object at all to this evidence. I mean, so, with respect to the second officer, if we're going to look at that, you know... It was litigated through trial. Okay. It was litigated and after objecting twice to the first officer, the court made clear that it was going to come in. But this was extensively litigated ahead of time and in a motion for mistrial. But there comes a point where... The only point is that the trial judge was trying to do his job the second time around. He's a very good judge. He told the lawyers at the beginning on motions that, you know, we're going to be very, very careful to not repeat what was done the first time, and the state paid no attention to it. Correct. And the trial judge might have misunderstood the court's opinion. Right. Mentioned both that the information came from the co-defendants, but also that the problem was the substance coming out, the description, including ethnicity, height, bills, his name and his address. And they argued it too, didn't they? They did argue that extensively, both before and after trial in motion for mistrial. No, what I'm talking about is in closing argument. Oh, in closing argument, they said, they made a comment that the reason that Mr. Ochoa gave it up as soon as he got to the station was because he knew the co-defendants were in custody. And there's only one inference that you can draw from that, especially since there was no other evidence that the jury heard. So while the state may have an interest in providing the reasons for its investigation, the state is, that interest does not overcome a defendant's confrontation clause right. What remedy are you asking for? We're asking for a new trial. Okay. The, yes. We ask alternatively to throw out certain counts, too. But only if we did, only if we affirmed on the basis of this. Right. Right. The state does not have to prove its reasons for investigation. It's not part of its burden of proof. And on top of that, the state doesn't need to introduce why the co-defendants are in custody or even the fact that they're in custody. That's not relevant to Ochoa's guilt, and it's not something they have to put in. So if the state wants to introduce the reasons for the investigation, the state can do so as long as they don't structure it to get the substance out or to elicit that it comes from the co-defendants. The, even the broadest scope of the investigatory procedure exception to the hearsay rule does not encompass getting out that substance of the statements. As this court found, placing the substance of the co-defendant's statements, which gave that detailed description of Mr. Ochoa, into evidence was something that was crucial to the state's case, and it prejudiced him and denied him his right to a fair trial. And as in the first trial, in this trial, there was no limiting instruction. As this court found, when there is no limiting instruction, there is no presumption that the jury did not consider it as a, the jury did not consider it as hearsay. And as Your Honor noted, the comment in closing argument exacerbated the error in this case by reminding the jury that the co-defendants were at that station and it implicated him. Because this error is preserved, harmless error applies, and the burden is on the state to prove beyond a reasonable doubt that the jury verdict would have been the same absent the error. As this court found, the only evidence against Mr. Ochoa was his foreign language confession. That confession was translated by the investigating officer, who admitted that his Spanish grammar was poor, and that he did not know how to write in Spanish. There was nothing else that linked Mr. Ochoa to the crime. So as this court found, the error was harmless. Does this court have any other questions with regard to Issue 1? No. With regard to Issue 2, the state argued that this was a gang initiation, absent any evidence that this was an initiation. Mr. Ochoa denied being a gang member, but the gang initiation provided the jury with a motive where there otherwise was no motive. Counsel's theory of defense was to attack the reliability of the statement. The statement had an inconsistency within it that might have stood out to the jury, as Mr. Ochoa denied being a gang member, but he admitted shooting a 2-6 gang member. The motive explains the inconsistency. It also suggests a formal procedure for getting into a gang without any evidence of that procedure. It suggests a prearranged plan or agreement between them. And it ultimately makes this a more terrifying crime, because it's inflammatory and preys on fear of gangs. On top of that, the state knew in advance that it wanted to do this, it wanted to make this argument, this was litigated. If this is a thing that Latin kings do, the state could have called a gang expert to introduce that. Because in order to make a reasonable inference, a reasonable inference can be drawn from common experience. It's not common experience that a, how to get into Latin kings, that's not something that's commonly known. Or a reasonable inference, it can be drawn from a chain of facts and evidence that lead to it. But here, one of those facts is missing. There's no antecedent fact that somebody, you shoot somebody and that's how you get into the Latin kings, or generally how someone gets into the Latin kings. Because that fact is missing, there's no reasonable inference here that this was an initiation. And if the Latin kings, if they were to initiate people into their gang in Chicago by having them shoot somebody, there would be a lot more bodies than there already are in Chicago. In addition to the reasons mentioned earlier why this was not harmless error, in particular because the entire theory of the defense was attacking the reliability of the statement and an inconsistency that might have helped with that argument was explained by the state in this improper mode of evidence, that's another reason essentially why it's not harmless error. If this court has no more questions, I'll reserve the rest of my time for rebuttal. All right, thank you. Good morning, Your Honors. May it please the court. I'm Assistant State's Attorney Joseph Alexander on behalf of the people of the state of Illinois. Your Honors, I'm going to start very plainly and very simply. There was nothing improper done in this case. Really? Let's start with the closing argument by the State's Attorney. Understand one thing before he starts on you or we do. It's more what the State's Attorneys at the trial level failed to do in this case. You're a good and capable advocate. You're on the good side. We just are very disappointed in the State's Attorney's Office at the trial level, their failure to prepare the police officers and to ask the right questions and to admonish the officers how to get things in. With that, he's going to, I'm going to probably lay back, but he's probably going to. The evidence in one form or another that was allowed in the first trial came in in the second trial, no matter what you argue. I mean, I understand your argument. I read it, and I see what you say on page 31 that they didn't reinforce, the trial lawyers did not reinforce this limited evidence, and I have to disagree with you strongly because of the way that they argued the case in closing argument. Closing argument, the State's Attorney stood up and said, why did he give it up? Because they had the other two guys in custody, and they knew that the police had solved the crime. A fourth grader could make those logical inferences, and they did what they could in this case in direct disservice to this good trial judge to sneak this evidence in and to still argue in front of the jury, even though this court back in, look at the dates here. The murder is in 02, first trial date is in 05, second trial is in 13, and here we are in 2017, and this case is going back. Your Honor, I'm going to start with the closing argument, and you mentioned that the State argued that they had the co-defendants in custody, and when you were speaking about the statement, we have to remember that in closing argument, the prosecutor is allowed great latitude, and can make reasonable inferences based on that evidence that was presented at trial. Which is why trial judges are loath to sustain objections in argument, because they're typically based on the evidence. But in here, the argument is based on evidence that should never have been heard by this jury, according to the order of this court. The argument that was made in closing argument was based on the evidence that was presented, and I'll get to the point about whether it should have been, whether it was properly admitted. But the arguments in closing argument was based on the evidence, and those were reasonable inferences based on the evidence that was presented. The evidence that was presented was properly admitted, because it goes to the course of the investigation, and I understand that this court sent this case back because there were, as this court said, serious questions designed to lead to the strong inference that the co-defendants implicated the defendant. If we compare what happened in this case to what happened in the first case, we can see that we will. It's completely different. And I'm going to specifically quote this court. It says that the state repeatedly elicited testimony that contained a strong inference that the co-defendants implicated the defendant. The exchange went beyond mere questioning concerning the investigative process, and the state reinforced this in the closing argument multiple times. None of that happened in this case. What we have, specifically with Officer Garcia, there were two questions asked of him. The first question was, after dealing with the co-defendants, what would you do next in the investigation? We obtained information of two additional offenders. There is nothing in that question and answer to suggest the substance of any conversations that he had with the co-defendants. In fact, it doesn't even mention a conversation. The question simply asks, after dealing with the co-defendants. That doesn't suggest that he had any conversations with them. Just dealing with them. Just dealing. And I think that's very important. So what kind of dealing are we dealing? What does dealing mean? We don't know, but we don't know that it was a conversation. We just know that they were dealing. Dealing didn't mean anything in this situation. Taking them to the interview room, booking them. We don't know from that statement that they were talking about a conversation. Mr. Alexander, again, you're a good and capable man, and I don't envy your position, but there's no way. There's no way that the 12 people in the box listening to this aren't understanding that the co-defendants are fingering their fellow gang members. And if the jury made that inference, this court and the Illinois Supreme Court has said that is okay. It's not that the jury can't make the inference. What case says that? Are you relying on Gaccio or Williams? I'm relying on Gaccio, Your Honor. Let me, if you give me one second. Sure. People v. Sims, excuse me, is an Illinois Supreme Court case. The side is 143-L-2-154, and it states that, and this is a direct quote, testimony describing the progress of an investigation is admissible, even if it suggests that a non-testifying witness is not guilty. So simply because a juror can make the inference that a co-defendant made implicated a defendant, it doesn't mean that the statement was improper or inadmissible hearsay. And the Supreme Court has recognized that. And again, if you compare what happened in the second trial to what happened in the first trial, and I direct the court to its own analysis and its own statements, what occurred in the first trial did not occur in the second trial. And simply because a juror could or could not make an inference, may or may have not made an inference, doesn't mean that the prosecutor was improper. And I suggest that, based on this record, both the trial judge and the prosecutor were very cautious in following this court's mandate so that the errors in the first trial were not repeated in the second trial. But then the next question, they become too specific. Yeah, what information did you initially have about these two subjects? We had nicknames. What were their nicknames? One was the name of Chilango and the other was Spook. And then you have the subsequent, the prior officers testifying about that. You've got two different officers. Some, the first one gets objections, that's Garcia. The second one, there's no objections and the same information gets in. They basically tell this jury in language coming from questions and answers directed to these two detectives that they talked or they were dealing with the two co-defendants and then they were, after that, they were looking for a guy named Chilango who lived at 24th and St. Louis and he had a tattoo. I mean, come on. That's pretty direct. That's not much of an inference. That's a pretty direct connection. I will respectfully disagree with Your Honor because if we look at the officer's testimony, Officer Lopez is where we have the discussion about the description that he gave to the jury. And before he got into that description, there was 1, 2, 3, 4, 5, 6, 7, 8, 9 questions before he even mentioned a description. And if we look at those questions, did you learn that Eduardo Torres was arrested? He says yes. And was Eduardo Torres subsequently brought to Area 4? He was. Did you continue your investigation? Yes. Did you have an opportunity to leave Area 4? Yes. And did Eduardo Torres also have the nickname Spook? Yes, he did. When he left Area 4, where were you going? What specific location? He says the 2400 block. Did you subsequently relocate to that location? Yes, we did. Who were you looking for? A male Hispanic. The sheer number of questions from beginning to end does not establish a link that any of this information came from Eduardo Torres. Because they would have been distracted by those 10 or 12 questions? It shows that there was no link, period. There is no reasonable inference from these questions and answers that this officer got that information from Torres. They were specifically talking about, was Torres arrested? Yes. What did you do after your arrest? Here's what they asked. Was Torres brought to Area 4? Yes. Did you have an opportunity to leave Area 4? That's the next question at 3.45 a.m. Yes. Where were you going? I'm going to 24th and St. Louis, where Chilango is. You know, I mean, come on. But, Your Honor, that's an inference that you're making. That's an inference that the jury could make. And, again, the Illinois Supreme Court has said just because that inference can be made doesn't mean that the statements and questions are improper. There is nothing in these questions and answers that leads to a reasonable conclusion that we were eliciting the substance of that conversation compared to what this court found in the first case. Except that this is the second bite of the apple, and in the first order it was laid out that this kind of information was an abuse of the investigatory exception to the hearsay rule. That's what this court decided. That's what the prosecutors of the second trial decided to ignore. Maybe because they didn't like the confession they got. Again, Your Honor, I respectfully disagree. Based on the entire record, I will say that with full confidence and full faith that the prosecutors and the judge in this trial went out of their way to avoid what happened in that first trial. And I would direct Your Honor to look at what you found in the first trial and compare it to what was done in the second trial. There were no serial questions, and there simply was no attempt to build, as this court said, the strong inference that this came from the co-defendants. What we have is simply an inference that can be made, which the Illinois Supreme Court in this court has repeatedly held that it's just because the inference can be made doesn't mean that the questions are improper. And even if this court finds that those questions and answers were improper, the error was cured by the trial court telling the jury, instructing the jury, to disregard the question and answers given by Officer Lopez. But didn't the first order indicate that a limiting instruction should have been given? I mean, whether or not these are really effective is, you know, debatable, but that's what the first order said, that a limiting instruction also should have been given, not just disregarded. Well, the trial court doesn't have to sue a sponsor and give a limiting instruction. If the defendant wanted a limiting instruction, he could have asked for one. He didn't. So that issue, at this point, is forfeited because, again, he could have asked for the limiting instruction, and because he didn't, there's no reason for us to litigate that matter at this point. But even if the limiting instruction wasn't given, and it wasn't in this case, the trial court told the jury to disregard the question and answer, and this court and the Illinois Supreme Court has said that juries are presumed to follow the trial court's instruction. And when we get to closing argument, the trial court instructed the jury that closing arguments are not evidence. The evidence is what was presented at trial. The trial court also said that things that were not admitted as evidence, or when objections were made and sustained, for the jury not to concern themselves with that because that was not evidence. So if we are entrusting a defendant's life to a jury, I think we should also be willing to admit that the jury can follow the instructions of the trial court, and, in fact, did so in this case. Again, and not to belabor the point, it is our position that there was nothing improper in this second trial, and the trial court and the prosecutor followed this court mandate. And tried to the best of their ability, and did succeed in ensuring that this defendant got a fair trial while presenting the evidence in a proper manner. Turning to the second issue, which is the... I don't know if you have to. I think we pretty much agree on that. I think you can avoid that one. The whole thing comes down to the first issue in this case. And it's difficult for us because I keep saying it's almost there should be a manual that tells what explicitly can and can't be asked. And I look at the appellate defender's brief and say I would almost request that you give that to the state's attorneys at the trial level, not the appellate. Yeah, the yellow brief. And to them, that they look at how it's phrased in there, and that they limit any specific questions. If we, and I'm pretty sure we're probably going to reverse this case. Just be aware that we've argued about this for a couple hours between us. And we've all ended up on different points coming to the conclusion that it has to go back again. I understand that, Your Honor. But I would urge this court to spend a little more time and to really look at what was done in the first trial. And why this court found that unreasonable and found error. And compare that to what happened in the second trial. I'm sorry. You agree that it's not necessary for the police to put into evidence the course of their investigation. They don't have to do that. Because it makes it easier, the narrative easier for the jury to follow. It actually is necessary in some instances, Your Honor. Simply because we want to prevent the jury from speculating as to why this defendant was arrested. And we want the jury to have a full story as to how this defendant came to be the one that the police focused on. And that is, the course of investigation is necessary to do that. Especially when you have multiple defendants as you do in this case. Because you have a defendant who's being tried on his own. And potentially jurors could ask, well, where are the other ones? Why is he here? And that's the reason we have the course of investigation exception. To explain each step that was taken to identify who the police believe is the actual offender. Except here, the only course of investigation they were relying on wasn't from lay witnesses. It was from co-defendants. No, it was from the police officers. Again, Your Honor, we didn't get into, and I'm again belaboring the point. But I think it's important, especially when we are talking about state's attorneys or prosecutors doing something improper. What we had in this case was the state's attorney following this court's order and not getting into the substance of the investigation. And actually, as being as cautious as the trial court in avoiding the substance. But having to get in the elements, the steps that the officers took. And the prosecutor, I think, did. And I know this court disagrees, but I think the prosecutor, based on this record, followed this court's mandate. And didn't get into the substance of the actual conversation. Okay, you have no eyewitnesses tying this guy to the crime. You have no fingerprints tying into the crime. You didn't find the gun at his apartment. There's no other evidence except what these cops are saying they learned after talking and being with the co-defendants. What are we supposed to think from that? Actually, there is evidence. We have a defendant's statement, which is corroborated by the other witnesses and the forensic evidence. So there's no doubt you've got a statement. We have a statement, which the statement was given in Spanish, written down in English by a guy who took one year of Spanish in college. The police officer who's investigating the crime. We do. But, Your Honor, that's usually who the police officer and the state's attorneys are the people that usually take the statements. Well, I don't think you translated it. Can I just take one second, Your Honor? That statement was the subject of a motion to suppress. Right. And the trial court found that that statement was given voluntarily. And if the defendant did not agree with that trial court's ruling, the defendant could have raised that in the first appeal and the second appeal. We totally accept that. And all I'm saying is that just reading the cold record here twice, two trials, seems to me that when you read the second trial, you have an attorney for the state who doesn't think that he or she has enough evidence without letting the jury know, somehow, wink, wink, wink, that we got the information from the co-defendant to go look for a guy named Chalongo at 2446 South St. Louis. The link seemed to me to be necessary for the state to get in because of issues with the reliability or credibility of the confession, even though you're absolutely right. It's not the subject in front of us. The jury could hear it, and they've heard it, and decide the case based just on that. But reading the record, it seems like the state was convinced they had to try to get the evidence in about the co-defendants. That's the way it reads. I understand that. And even if that is your interpretation of the record, Your Honor, even if we exclude what the officers testified to, I don't think we can get away from the overwhelming evidence of this defendant's guilt. And I think that's something that we have to take into consideration, too. Which, even if we take away what the officer said, we're still left with a voluntary, properly admitted statement, which is corroborated by the other evidence, a statement in which this defendant admits to jumping in the car with gang members, going to a rival gang member's territory, pointing a gun at someone that he didn't know, and shooting. And he didn't shoot the gang member. We're not talking actual innocence here, okay? I understand that, Your Honor, but again, when we are dealing with evidentiary rulings, you do not have to reverse a trial court's decision when the evidence is overwhelming. And in this case, I don't see any way that it's disputable that this evidence was overwhelming, given the statement that he gave to the police officer that is corroborated by the other evidence and the other witnesses. And the fact that we can take away the officer's testimony and the jury still has more than sufficient overwhelming evidence to convict this defendant of shooting an innocent 15-year-old girl, I think that's very, it's very appropriate for this court to find that any error in admitting, any error in inferences that could be made from question and answers are, don't warrant reversal. I just, I'm sorry, I just. Counsel, this case is unspeakably tragic. It's been going on way too long, and there's a lot of information about the victim and her family and what the family has gone through, and the court is fully aware and beyond sympathetic about it. And it pains us greatly to have to contemplate that this case would have to be retried. It pains us. I understand that, and I recognize that. But again, it doesn't have to be reversed because the evidence was simply so overwhelming. All right. Let's just flip back a little bit. The whole problem with the first trial and the second trial was the out-of-court statements by the cops repeating or saying their course of investigation based on what they found out from the co-defendants. So if the co-defendants' statements were so strong that the cops got their information from, why didn't the state just fast-forward all that stuff and go past the hearsay statements and bring in the co-defendants' witnesses? That's a decision that the prosecuting attorney makes as far as which witnesses to present, and I can't in good faith question their decisions because I wasn't the trial attorney. But I can say without a doubt that these prosecutors followed this court's mandate, avoided the substance of the conversations, stuck with the exception to the hearsay rule. The record bears that out. And even if there was error, again, the trial court sustained objections that cured that error, and the error, again, is harmless considering the overwhelming evidence of this defendant shooting the victim for no reason other than being friends with the gang or being initiated into the gang, which, again, this court doesn't want to hear that issue, but there is evidence to support that theory and that inference. So based on the arguments that I've made here and the arguments that we've made in our brief, I ask that this court affirm the defendant's conviction and sentence. Thank you. Thank you. I don't know if you need to say much. Yeah, you might find the mute button on the clicker. I have a couple of points. Firstly, the state's course of investigation information is not necessary, as the state insists. It might be relevant, but it's not a part of their burden. So it isn't something they have to introduce. And one thing that we haven't really talked about that I just want to call this court's attention to is that this case is different than most other course of investigation cases because there really is only the confession. Most course of investigation cases do have a lot, like some other evidence. Other forensic stuff. Something. Another witness. This is particularly unique. With regard to the cases, the state mentions Sims. On pages 13 and 14 of this court's decision in the first case, this court found that Sims did not apply. There was a limiting instruction there. And with respect to Gaucho, Gaucho is a case that's often cited for a brief mention of course of investigation,  Gaucho, first, the fact that the victim identified the defendant in Gaucho was properly admitted through the spontaneous declaration, exception to the hearsay rule, when an officer who arrived at the scene found this victim locked in a trunk and he spontaneously uttered that Robert Gott or Gotch. So later, an investigator at the hospital with the victim had testified that the victim named the defendant. But this was the second time that information came in. So what the defendant in that case raised on appeal was that the prosecutor erred and committed misconduct by emphasizing that hospital comment in closing argument. So the Supreme Court said, well, it's course of investigation, but actually we do think it's improper for the prosecutor to say this in closing argument, but it's not plain error. So in Gaucho, that is course of investigation, considering that the information, and it was properly admitted and it was already before the jury, the jury is not going to consider it more for its truth when it was already allowed to consider it for its truth, if that makes sense. And... You're good, I quit.  Just take a good look at my notes. You don't have to cite people versus Poland. Just to remind this Court, this State doesn't have to introduce the fact that the co-defendants were in custody. It doesn't have to introduce its course of investigation. It cannot elicit the substance of those statements, and it cannot suggest that those statements came from the co-defendants. However, it decides to do this, should this Court remand. For the reasons argued today and stated in our briefs, respectfully request that this Court reverse Mr. Gaucho's case and remand for a new trial. Okay, well, I want to thank you both for your time. I especially want to thank the State's attorney at the level of the appeal in saying you went beyond what would be normally expected under the pressure of our viewing of the State's attorney at the trial level. Absolutely. You well prepared their case, whereas you were well prepared with what you could deal with, and you handled the betterment of one of our fellow justices very well. And the public appellate defender, I would suggest that the State take her yellow brief and give it to the State at the trial level to let them contemplate somehow using lesser language, no specificity. I just don't understand why they didn't just say we identified that there were gang members and not any specificity and just get over that hump to get to the confession. But they didn't. They got tied up in specificity. So thank you both very much.